NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
Case No. 2022-0613
Citation: <u>State v. Maxi</u>, 2024 N.H. 8

THE STATE OF NEW HAMPSHIRE

v.

JEAN M. MAXI, JR.

Argued: October 12, 2023
Opinion Issued: February 13, 2024

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sam M. Gonyea, assistant attorney general, on the brief, and Anthony J. Galdieri orally), for the State.

Carl Swenson, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DONOVAN, J.

[¶1] The defendant, Jean M. Maxi, Jr., appeals a decision from the Superior Court (Temple, J.), arguing that under this court's plain error standard, the superior court violated the double jeopardy provision of the New

Hampshire Constitution, see N.H. CONST. pt. I, art. 16, by sentencing the defendant on one count of attempted felonious sexual assault (FSA), see RSA 629:1 (2016); RSA 632-A:3, II (Supp. 2023), and one count of certain uses of computer services prohibited, see RSA 649-B:4, I(a) (2016). The defendant, pro se, also argues that: (1) trial counsel failed to provide all trial transcripts and "all required files pertaining to trial," which makes an effective appeal "not feasible"; and (2) he received ineffective assistance of counsel in this appeal because the appellate defender failed to consider or incorporate the defendant's research into this appeal and failed to argue a double jeopardy violation under the United States Constitution. We conclude that, as charged, the indictments for the two offenses require different evidence to prove different elements and, accordingly, that the trial court's sentencing order did not violate the defendant's constitutional protection against double jeopardy. We also conclude that the defendant's pro se arguments are either insufficiently developed for our review or without merit. Accordingly, we affirm.

I.      Facts

[¶2] The jury could have found the following facts. In 2019, the defendant created a profile on MeetMe, an online dating application, under the pseudonym of "John Johnsoni." Although at the time the defendant was thirty-four years old, his profile stated that he was thirty-one years old. On January 1, 2020, the defendant used MeetMe to initiate a conversation with someone named "Kristen," whose profile described her as a twenty-nine-year-old female. In fact, "Kristen" was a fictitious persona that Detective Sprankle of the Merrimack Police Department created on Skout, a sister company of MeetMe, as part of an "undercover chat operation" designed to use web-based applications to identify people who have a sexual or otherwise harmful interest in children. Skout and MeetMe permit users from both platforms to communicate with each other.

[¶3] Soon after the defendant first messaged "Kristen," "Kristen" told the defendant that she would be fourteen in March, to which the defendant responded, "13, huh." "Kristen" asked the defendant if he was going to stop talking to her, and the defendant responded that he would not. Later in the conversation, "Kristen" asked the defendant if he was really thirty-one, as stated in his profile, which the defendant confirmed. Throughout the conversation with the defendant, Sprankle portrayed "Kristen" as a juvenile female. Sprankle testified that eventually the "tone of the conversation shifted," and in the middle of a "very benign" conversation, the defendant asked "Kristen" if she was a virgin. After "Kristen" responded that she was, the defendant asked "Kristen" several more questions about her sexual experience and her physical appearance. Eventually, the defendant told "Kristen" that he was "[w]anting to be touched" by her and that he would like to meet "Kristen" in real life.

2

[¶4] The defendant and "Kristen" moved their conversation from MeetMe to TextNow, an application that allowed the two parties to communicate via text messages while still allowing the defendant to conceal his true phone number. The defendant and "Kristen" communicated via TextNow on January 1 and January 2. During this conversation, the defendant asked "Kristen" for pictures of herself. Sprankle sent two pictures depicting an underage female to the defendant, which were, in reality, dated pictures of a female detective from when she was an adolescent. The defendant responded with a picture of himself in which he was not wearing a shirt. The conversation continued to take on a "sexual nature," with the defendant suggesting that he would like to take "Kristen's" virginity and shower with her. The defendant and "Kristen" also spoke over the phone twice, during which a female officer portrayed "Kristen's" voice. Following the first phone conversation, Sprankle testified that the defendant asked "Kristen" if he could come over and that the conversation became "geared [towards] setting up a date" to meet.

[¶5] The defendant and "Kristen" eventually agreed to meet on January 3. "Kristen" provided the defendant with her fictitious address and asked the defendant to park in the parking lot of a nearby business plaza. On January 3, Sprankle, along with several other officers and a special reaction team, went to the business plaza. Sprankle observed the defendant arrive and proceed towards "Kristen's" fictitious residence. Sprankle and another officer assisting in the operation approached the defendant and announced themselves as the Merrimack Police. The defendant ran back towards his vehicle, and a bottle of body wash and sexual lubricant fell out of his pocket. The defendant was subsequently detained and arrested. A search of the defendant was conducted and condoms were located on his person.

[¶6] As relevant to the case at hand, the defendant was indicted on one count of certain uses of computer services prohibited and one count of attempted FSA. See RSA 649-B:4, I(a); RSA 629:1; RSA 632-A:3, II. The trial lasted two days, during which Sprankle, the female officer who impersonated "Kristen's" voice, and the defendant testified. At both the opening and the closing of the trial, the presiding judge read the indictments for both offenses to the jury and identified the specific elements of each charged offense. The jury found the defendant guilty on both counts. The superior court sentenced the defendant for certain uses of computer services prohibited to two to seven years, stand committed in the State Prison, and for attempted FSA to three-and-one-half to seven years, all suspended for ten years from his release on the certain uses of computer services prohibited sentence. This appeal followed.

II.    Analysis

[¶7] On appeal, the defendant argues that the certain uses of computer services prohibited and attempted FSA indictments, as charged, comprise the same offense for double jeopardy purposes, thus violating Part I, Article 16 of

3

the New Hampshire Constitution. Specifically, he avers that the certain uses of computer services prohibited offense, as charged, is a lesser-included offense of the attempted FSA offense, as charged. See State v. Farr, 160 N.H. 803, 807 (2010). Because the defendant did not raise the double jeopardy argument in the trial court, the parties agree that this issue should be reviewed under our plain error standard. See Sup. Ct. R. 16-A. To find plain error: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights. State v. Leroux, 175 N.H. 204, 208 (2022). If all three conditions are met, we may then exercise our discretion to correct a forfeited error only if the error meets a fourth criterion: the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. Id. at 208-09. Accordingly, we begin by considering whether the trial court erred in sentencing the defendant for both the offense of certain uses of computer services prohibited and the offense of attempted FSA in violation of the defendant's double jeopardy rights.

[¶8] The issue of double jeopardy presents a question of constitutional law subject to de novo review. State v. Lynch, 169 N.H. 689, 706 (2017). We confine our analysis to the State Constitution because the defendant has not raised a claim under the Federal Constitution. See State v. McKean, 147 N.H. 198, 199-200 (2001). Part I, Article 16 of the New Hampshire Constitution protects a defendant from being punished twice for the same offense. Lynch, 169 N.H. at 706. As we have previously explained:

> Multiple punishment cases come in two varieties. First, there are the so-called "double-description" cases, in which the issue is whether two statutes describe two separate offenses or are merely different descriptions of the same offense. Second, there are "unit of prosecution" cases in which the problem is not that the same course of conduct is proscribed by more than one statute but that a defendant's continuing course of conduct is fragmented into more than one violation of a single statutory provision.

Id. (quotation omitted). The defendant argues, and the State does not dispute, that this case is of the first variety.

[¶9] Under the New Hampshire Constitution, "two offenses will be considered the same for double jeopardy purposes unless each requires proof of an element that the other does not." Farr, 160 N.H. at 807 (quotation and brackets omitted). "We focus upon whether proof of the elements of the crimes as charged will in actuality require a difference in evidence." Id. "In making this inquiry, we review and compare the statutory elements of the charged offenses in light of the actual allegations contained in the indictments." Id. (quotation omitted). This test is referred to as the "same evidence" test. State v. Locke, 166 N.H. 344, 351, 353 (2014) (noting that our cases have not

4

consistently applied our "same evidence" test and "invit[ing] parties in future cases to ask us to reconsider our double jeopardy jurisprudence").

[¶10] The defendant was convicted and sentenced for committing the crime of certain uses of computer services prohibited. RSA 649-B:4, I (2016), provides:

> I. No person shall knowingly utilize a computer on-line service, internet service, or local bulletin board service to seduce, solicit, lure, or entice a child or another person believed by the person to be a child, to commit any of the following:
> (a) Any offense under RSA 632-A, relative to sexual assault and related offenses.

As charged in the indictment, the State had to prove that the defendant:

> knowingly utilized the internet applications Skout and TextNow in an attempt to solicit a person believed to be a child to commit an offense under RSA 632-A, when through an online conversation, he attempted to solicit "Kristen," an individual he believed to be a 13 year old female, to meet him for the purpose of engaging in sexual penetration under RSA 632-A . . . .

[¶11] The defendant was also convicted and sentenced for attempted FSA. See RSA 629:1; RSA 632-A:3, II. Under RSA 629:1, I:

> A person is guilty of an attempt to commit a crime if, with a purpose that a crime be committed, he does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step toward the commission of the crime.

A person is guilty of FSA if such person "[e]ngages in sexual penetration with a person who is 13 years of age or older and under 16 years of age where the age difference between the actor and the other person is 4 years or more." RSA 632-A:3, II. As charged in the indictment, the State had to prove that:

> with the purpose that the crime of ATTEMPTED FELONIOUS SEXUAL ASSAULT be committed, [the defendant] arranged via an internet app to meet a person 13 years or older but less than 16 years, whom he believed to be a 13 year old named "Kristen," where there was an age difference of more than 4 years and he [was] not her legal spouse, and then went to meet her for sexual penetration, which under the circumstances as he believed them to be, constituted a substantial step toward the commission of the crime of FELONIOUS SEXUAL ASSAULT . . . .

[¶12] On appeal, the defendant argues that, as charged, "[t]he use of a computer for a prohibited purpose was a lesser-included offense of attempted felonious sexual assault." The defendant maintains that the attempted FSA indictment alleges that both the defendant's "prohibited computer use" — i.e., that he "arranged via an internet app to meet ['Kristen']" — as well as the defendant's subsequent travel to meet "Kristen," comprise the substantial step toward the commission of FSA. Therefore, the defendant reasons, "proof of soliciting or arranging sex with a minor via the internet was necessary to prove a substantial step towards the crime of felonious sexual assault and to prove prohibited use of a computer." As a result, the defendant contends that "[o]nce evidence established the elements of attempted felonious sexual assault as charged, the State was not required to prove any additional element to convict [the defendant] of using a computer for a prohibited purpose." The State counters by arguing that New Hampshire's double jeopardy provision does not bar dual convictions for attempted FSA, RSA 629:1; RSA 632-A:3, II, and certain uses of computer services prohibited, RSA 649-B:4, I(a), "because each crime, as enacted and indicted, requires different evidence to prove different elements." (Bolding and capitalization omitted.) The State argues that "the indictment specifically alleged that the defendant's travel to meet the victim, not his arrangement of the meeting on the internet, was the substantial step towards the commission of FSA."

[¶13] We conclude that, under a plain reading of the attempted FSA indictment, the alleged substantial step occurred when the defendant "arranged" to meet "Kristen" "and then went to meet her for sexual penetration." (Emphasis added.) See State v. Nickles, 144 N.H. 673, 679 (2000) (rejecting the defendant's interpretation of the indictment). Thus, although we agree with the defendant that the indictment alleged a two-part substantial step, we disagree that the State was required to prove that the defendant used an "internet app" when he "arranged" to meet "Kristen." See State v. Lurvey, 122 N.H. 190, 192-93 (1982) ("As is true in an indictment, averments in an information that are in excess of those required by the statute defining the offense may be treated as superfluous, and thus do not necessarily control the State's burden of proof." (quotation omitted)); see also 1 Richard B. McNamara, New Hampshire Practice Series: Criminal Practice and Procedure § 15.11, at 414 (2023) ("As a general rule, any matter that is not a necessary element of the crime alleged may be disregarded as surplusage.").

[¶14] Given this conclusion, in this case, "proof of the elements as charged requires different evidence." McKean, 147 N.H. at 201. The statutory offense of attempted FSA, read in light of the applicable indictment, required the State to prove that the defendant took a substantial step toward the commission of the crime of FSA when he "arranged . . . to meet" and "went to meet ['Kristen'] for sexual penetration." The statutory offense of certain uses of computer services prohibited, read in light of the applicable indictment, required the State to prove that the defendant "utilized the internet

applications Skout and TextNow in an attempt to solicit . . . 'Kristen' . . . to meet him for the purpose of engaging in sexual penetration."

[¶15] Accordingly, evidence that the defendant took a substantial step toward the commission of FSA when he "arranged . . . to meet" and "went to meet ['Kristen'] for sexual penetration" was essential to sustain the attempted FSA charge but not the certain uses of computer services prohibited charge. Similarly, evidence of the defendant's use of "internet applications Skout and TextNow" to "solicit" "Kristen" to meet with him in order to engage in sexual penetration was essential to sustain the certain uses of computer services prohibited charge but not the attempted FSA charge. See State v. MacLeod, 141 N.H. 427, 429 (1996); McKean, 147 N.H. at 201. Thus, the evidence required to prove the elements of each offense, as charged in the indictments, is different, "regardless of the evidence the State elected to produce in support of each charge." McKean, 147 N.H. at 201 (quotation omitted).

[¶16] The State concedes that it relied upon evidence of the defendant's internet conversations with "Kristen" to prove both the attempted FSA and the certain uses of computer services prohibited charges. With respect to the attempted FSA offense, the State relied, in part, on the internet conversations to establish the defendant's subjective understanding of the circumstances when he arranged and then traveled to meet "Kristen" — namely, that he believed he was going to meet a thirteen-year-old in order to engage in sexual penetration. See RSA 632-A:3, II; RSA 629:1. As to the certain uses of computer services prohibited offense, the State relied, in part, on the internet conversations to establish that the defendant utilized an internet application to solicit sexual penetration from "Kristen." See RSA 649-B:4, I(a). However, "[i]t does not matter how overlapping, reciprocal, or similar the evidence used to sustain the indictments was if a difference in evidence is actually required to prove the crime charged." State v. Hull, 149 N.H. 706, 717 (2003); see also MacLeod, 141 N.H. at 429-30 ("Our conclusion is not affected by the defendant's claim that the State might utilize overlapping or reciprocal evidence to establish both offenses . . . ."); McKean, 147 N.H. at 201 ("The similarity of evidence used to prove some of the elements does not mean that the same evidence is required for all of the elements." (brackets and quotation omitted)). Accordingly, under our plain error standard, we conclude that the trial court did not err in sentencing the defendant for both certain uses of computer services prohibited and attempted FSA. See Sup. Ct. R. 16-A.

[¶17] Lastly, we address the defendant's pro se arguments. The defendant argues that he received ineffective assistance of counsel in this appeal when his appellate defender failed: (1) to raise a double jeopardy argument under the Federal Constitution; and (2) to consider or incorporate the defendant's research into his appeal. Even assuming that the defendant properly raised his ineffective assistance of appellate counsel claims and that they are permissible for direct appellate review, see State v. Brown, 166 N.H.

520, 522-23 (2014); cf. State v. Thompson, 161 N.H. 507, 527 (2011), such claims are insufficiently developed, as the defendant fails to consider or apply the two-part test used to evaluate ineffective assistance of counsel claims, see State v. Collins, 166 N.H. 210, 212-13 (2014). Accordingly, we decline to review the defendant's ineffective assistance of counsel claims and dismiss them without prejudice. See State v. Blackmer, 149 N.H. 47, 49 (2003). The defendant also argues that trial counsel failed to provide all transcripts and other files pertaining to the trial, and as a result, "an effective appeal is not feasible." The defendant, however, fails to elaborate on what transcripts or other "required files pertaining to trial" the trial counsel failed to provide for appellate review, and we have not identified any missing transcripts or "other files" that, if provided, would have assisted us in resolving this appeal.

### III.    Conclusion

[¶18] For the foregoing reasons, we conclude that, as charged, the certain uses of computer services prohibited offense does not constitute a lesser-included offense of the attempted FSA offense and, therefore, that the trial court did not violate the defendant's constitutional guarantee against double jeopardy. See N.H. CONST. pt. I, art. 16. Accordingly, we affirm.

Affirmed.

MACDONALD, C.J., and BASSETT and HANTZ MARCONI, JJ., concurred.